67 F.3d 299
 150 L.R.R.M. (BNA) 2575
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BEHNKE, INC., Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner.
 Nos. 94-5818, 94-5882.
 United States Court of Appeals, Sixth Circuit.
 Oct. 3, 1995.
 
 Before: MILBURN, GUY and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case is before us on Behnke, Inc.'s ("Behnke" or "the Company") petition for review and the National Labor Relations Board's ("NLRB" or "Board") cross-application for enforcement of the NLRB's April 28, 1994 Decision and Order. We ENFORCE the Board's Order in part.
 
 I.
 
 2
 Behnke ships goods by truck. Betty Behnke owns and manages the Company; Mark Behnke is her assistant. James Betz ("Betz") had been a city driver since 1989. From 1989 until November 1991, Betz's exclusive assignment was the "Ralston shuttle." Betz had neither a contractual nor a bid right to this shuttle. In November 1991, Behnke informed Betz that the shuttle would be rotated monthly between Betz and another employee, Rob Brown. From November 1991 through April 1992, Betz drove the shuttle every other month. Betz was assigned to the shuttle for May 1992.
 
 
 3
 On May 7, 1992, Betty Behnke told Betz why she believed that the Union should not be voted in by the city drivers. It is undisputed that Betty's speech is protected under the Act. Betz did not openly support the Union until May 8, when he acted as the Union's election observer. The Union won the election.
 
 
 4
 After Betty Behnke learned that the Union won the election, she purportedly went into the drivers' room, grabbed the telephone from Betz, hung it up, and ordered Betz and the other drivers back to work. When Betz returned to the terminal, he found a note, allegedly from Mark Behnke, ordering Betz to remove his disabled car from the lot. Betz previously had obtained permission from Betty to leave his car on the lot. Betz also asserts that he learned, from Andrew Behnke, a dispatcher, that Betz was being taken off the Ralston shuttle at Ralston's request. Andrew Behnke denies Betz's charge. Behnke maintained that Betz was replaced because Brown was more efficient. Behnke documents support this assertion, and the Union accepted this explanation one week after the work assignment change occurred. Behnke also explains that Betz was not removed until after the election to avoid the accusation that Behnke tainted the election.
 
 
 5
 Subsequently, Betz was named chief steward and a member of the Union's bargaining committee. Betz continued to work for Behnke until his discharge on Tuesday, August 3, 1992. Betz became ill on August 1, and decided he was too ill to work on Sunday, August 2. Betz's mother-in-law called Mark Behnke, indicating that Betz would not work on August 2. Behnke indicated that Betz would need a note from a hospital doctor to excuse his absence. Prior to this date, Behnke only required a doctor's note to excuse an employee's absence.
 
 
 6
 On Sunday morning, Betz's wife called to confirm his absence. Mark Behnke reiterated the demand for a hospital note. When Betz's wife called later, to indicate that Betz had a doctor's appointment on August 3, Behnke responded that unless the note was from a doctor at the hospital, Betz would be fired. Betz remained off work on August 3. Betz met with Betty Behnke on Tuesday, August 4. At the meeting, Betty restated the Company's work absence policy. Betz replied that he had a doctor's note. Mark Behnke stated that the Company required a hospital note and fired Betz.
 
 
 7
 Betz challenged both the job assignment change and his termination. In its Decision and Order, the NLRB found that Behnke violated sections 8(a)(1) and (3) of the National Labor Relations Act ("Act") by changing Betz's work assignment based on his union activities; and violated section 8(a)(1), (3), and (5) of the Act by unilaterally promulgating a work rule requiring employees to supply proof of illness from a hospital and discharging Betz for failing to comply with this rule.[1] This appeal ensued.
 
 II.
 
 8
 We will sustain the Board's factual findings if substantial evidence in the record as a whole exists to support the findings. NLRB v. Pentre Elec., Inc., 998 F.2d 363, 368 (6th Cir.1993). We will not displace the Board's choice between two fairly conflicting views of the evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Gratiot Community Hosp. v. NLRB, 51 F.3d 1255, 1259 (6th Cir.1995).
 
 A.
 
 9
 First, we find that substantial evidence does not exist to support a finding of union animus with respect to Betz's May job assignment change. The Board must establish that Betz was reassigned because of union animus. NLRB v. Transportation Management Corp., 462 U.S. 393 (1983); section 8(a)(3). The burden then shifts to the employer to prove that it would have made the same decision even in the absence of the protected activity. Id. at 401-03; Turnbull Cone Baking Co. v. NLRB, 778 F.2d 292, 296 (6th Cir.1985), cert. denied, 476 U.S. 1159 (1986). If the employer's reason is determined to be pretextual, the employer has not met its burden. Id. at 296.
 
 
 10
 Behnke argues that the administrative law judge ("ALJ") and the Board improperly considered Betty Behnke's May 7 protected speech to find union animus. 29 U.S.C. Sec. 158(c). We decline to address Behnke's claim that the improper reliance on Betty's protected speech should negate a finding of union animus because even if the other evidence cited by the Board constitutes substantial evidence of union animus, there is no evidence that Behnke's proffered nondiscriminatory reason for the job assignment change was pretextual.
 
 
 11
 Betz was removed from the Ralston shuttle because Brown was more productive, and was not removed until after the election to avoid the accusation that Behnke tainted the election. The sole argument in favor of a finding of pretext is that a dispatcher initially told Betz that Ralston requested the change. This argument is not persuasive. First, there is no evidence that a dispatcher would know why a change in assignment was made, or that a dispatcher's statements would be binding on the Company. Second, Behnke had reviewed internal productivity records before deciding that Brown was more productive. Third, soon after the assignment change was made, Behnke met with the Union on this issue. After the Union reviewed the numbers, it was satisfied that the assignment change was proper. Because there is no evidence that Behnke's business decision was pretext for discrimination, we do not enforce this portion of the Board's Order.
 
 B.
 
 12
 Substantial evidence supports the Board's finding that the Company's discharge of Betz violated section 8(a)(5). Prior to August 1, Behnke's practice had been to require a doctor's note from an employee who missed work due to an illness. It is undisputed that hospital verification was not required. Here, Betz supplied a doctor's note upon his return to work. Behnke discharged Betz for failing to supply hospital verification. Because the Union was certified at the time of Betz's discharge, Behnke was obligated to notify and bargain with the Union before it implemented any new rules affecting the employees' terms and conditions of employment. NLRB v. Katz, 369 U.S. 736, 743 (1962). Behnke never required employees to obtain a hospital note to avoid discharge. By making such a request of Betz, Behnke violated section 8(a)(5). Gratiot Community Hosp., 51 F.3d at 1259. Accordingly, we enforce this portion of the Board's Order.
 
 C.
 
 13
 We will not enforce the Board's finding that Betz was discharged for his union activity in violation of section 8(a)(1) and (3). The ALJ found that Behnke's union animus in May 1992 carried over to August. There is no evidence in the record, however, that any new conflicts or problems arose between the work assignment change and Betz's discharge. Because we earlier concluded that the work assignment change was proper, substantial evidence does not exist to support a finding that the discharge also violated section 8(a)(1) and (3), and we decline to enforce this part of the Board's Order.
 
 III.
 
 14
 For the aforementioned reasons, we will ENFORCE the Board's finding that Behnke violated section 8(a)(5) when it discharged Betz, but we will REVERSE the remainder of the Order.
 
 
 
 [1]
 See 29 U.S.C. Sec. 158(a)(1), (3), and (5)